Summers, C. J.
All the parties to the sale were members of the Cincinnati Chamber of Commerce, the sale was there made and was subject to the following rule of the organization governing purchases of grain:
“Rule 7, Section 1. All purchases of grain, unless otherwise agreed upon, are understood to be for cash and to be paid for on delivery.”
A witness for the plaintiffs testified that the manner of selling grain in carload lots on “change” is as follows: The official grain inspector of the Chamber of Commerce grades the grain in the car in the railroad yards, and delivers a samplé of the uniform grade of the grain in the car to the consignee or owner, who then exhibits the sample on “change” and when he makes a sale he delivers to the purchaser the sample and a delivery order, like that set out in the statement of facts, to the carrier to deliver the car to the purchaser or order, and the purchaser then orders the car to his elevator or switch, or wherever he wishes to unload it, and as it is being unloaded it is weighed by the official weigher, who gives the seller a certificate of the weight and the seller then makes a bill to the buyer at the agreed price, which the buyer pays in cash upon its1 receipt. A *284 witness for the defendants testified on cross-examination that on “change,” in the trade, a delivery of the order is considered a delivery of the property, and that when the order is delivered it is customary for the buyer to pay 80 per cent, of the price, according to the estimated weight of the car, and that the balance is paid upon receipt of a bill with the certificate of the official weigher attached.
It is undisputed that settlement was to be based upon the certificate of the weigher, and the circuit court based its decision upon the assumption that, as under the rule, sales were cash on delivery and as under the usage the weight was to be ascertained as the car was unloaded, delivery could not be complete until the weight was certified. It is elementary in a sale of specific chattels that neither payment nor delivery is essential to the passing of title. The passing of the title may be conditional on payment, but generally, in such sales the title passes, but delivery and payment are immediate and concurrent acts, and if delivery be made in expectation of immediate payment and such payment is not made, the seller may reclaim the goods. When the goods must be counted, weighed or measured in order to identify them, the property does not pass, but when they are specific and these acts are to be done merely to ascertain the sum to be paid, the title may pass although the goods have not been delivered. The passing of the title depends upon the intention. If delivery has not been made, or if made in order that the price may be ascertained, the presumption is that the property has not passed. If the sale is for cash, or cash on delivery, and delivery is made, *285 the presumption is, that it was made in expectation of immediate payment, and that the delivery was conditional; and the same is true and the presumption stronger when weighing is to be done by the buyer. In Wabash Elevator Co. v. First National Bank of Toledo, 23 Ohio St., 311, there was a sale on “change” between two commission men of five thousand bushels of corn. The seller sent by a clerk warehouse receipts to the buyers in expectation of immediate payment. The buyers accepted the receipts and informed the clerk that they would credit the seller with the price. The seller would not consent to this and the buyers refused to return the receipts. The court held that a delivery with the expectation of receiving immediate payment is not absolute, but conditional until payment is made, and, when there is no waiver of payment, no title vests in the purchaser until the price is paid. In Hodgson v. Barrett, 33 Ohio St., 63, the sale was of a barge load of coal, one-half cash. The coal was delivered and a check given for the cash. The check went to protest and the seller replevied the coal, and it was held: “2. Where goods are sold for cash, delivery and payment are concurrent conditions of the sale; and a delivery made in expectation of immediate payment is conditional only; so that if payment be refused, the vendor may reclaim the goods. 31 Where payment is made by a check, drawn by the purchaser on his banker, this is a mere mode of making a cash payment, and not the acceptance of a security. Such payment is conditional only, and if the check upon due presentation is *286 dishonored the vendor’s right to retake the goods from the purchaser remains in full force.”
But payment as a condition may be waived by the seller, and if it is the .property vests' in the buyer. All attending circumstances may show that the delivery was not conditional, even when weighing is necessary to ascertain the price, and that the intention was to transfer both the title and possession and to trust the buyer to pay when the price is ascertained. In the present case no presumption of waiver would arise merely from the delivery of the car to the buyer, for by the rule of the Chamber of Commerce the sale was for cash on delivery and the sum to be paid could not be ascertained until the oats were weighed, which by the usage on “change” was- to be done by the official weigher as the car was unloaded, so that delivery would not be complete until the oats were weighed. But if by the usage on “change” the delivery of a delivery order was the delivery of the oats and 80 per cent, of the estimated price was then payable and the balance when the, weight was officially certified, then Good & Company waived payment in cash on delivery when they gave the deliver}^ order without the cash payment, and the 80 per cent, either was payable on demand or credit for the whole price was extended to Bender until the weight was officially certified, and the title of an innocent sub-vendee from Bender would be good against Good & Company. And, independently of the usage, last referred to, when it is considered that the sale was made on “change” b}r one dealer to another dealer and not to a consumer, and that a delivery order was *287 given directing the delivery not merely to the buyer, but to him or to his order, the conclusion must be that Good & Company assented to a sale and delivery of the oats by Bender, and that it was the intention of Good & Company by the sale and the giving of the delivery order to transfer both the title and the unconditional possession of the property to Bender.
The transaction, though fraudulent on the part of Bender, was not void, but only voidable. If the delivery without payment was merely a waiver of immediate payment, or an extension of credit, it may be that as between thé vendor and the vendee the vendor could have protected himself, for it is an implied condition in a sale on credit that the buyer shall keep his credit good. Diem v. Koblitz, 49 Ohio St., 41. Good & Company as against Bender might have repudiated the transaction, but they could not do so at the expense of an innocent sub-vendee. “When a vendee obtains possession of a chattel with the intention by the vendor to transfer both the property and possession, although the vendee has committed a false and fraudulent misrepresentation in order to effect the contract or obtain the possession, the property vests in the vendee until the vendor has done some act to disaffirm the transaction; and the legal consequence is that if before the disaffirmance the fraudulent vendee has transferred either the whole or a.partial interest in the chattel to an innocent transferee, the title of such transferee is good against the vendor.” Kingsford v. Merry, 1 H. & N., 503; Pease v. Gloahec, L. R., 1 P. C., 219.
It is true that a delivery order, unlike a bill of *288 lading, is not considered a symbol of the goods so that a transfer of it is constructively a delivery of the goods, but is considered merely a request in writing by the owner of goods to his agent or bailee, having custody of the goods, to deliver them as therein directed, and that the seller may revoke the order against an innocent sub-vendee of the goods and transferee of the order. But when the order has been executed and the goods have been delivered to an innocent sub-vendee, or the bailee has attorned to him, it is too late to revoke the order. As to him there is nothing to revoke, the delivery has been actually or constructively made and the goods are no longer in the possession of the seller, but in the possession of the sub-vendee or in the possession of his agent. In Ker & Butterworth’s Fifth Edition-of Benjamin on Sales, 471, it is said in substance that in this country, as well as in England, purchases by an insolvent buyer who does not intend to pay are treated as voidable and not void, and that while in some of the 1 states the transaction is treated as absolutely void, the rights' of innocent purchasers from a fraudulent buyer are protected, and that it is of little practical importance whether the protection is afforded on the ground that the original contract of sale is valid until disaffirmed, or whether the preference of the right of an innocent third person is based upon the principle, that when one of two innocent parties must suffer from the fraud of a third, the loss shall fall on the one who enabled the third party to commit the fraud.
It follows that the correct result was reached *289 in the court of common pleas and that the circuit court was in error in reversing the judgment, and the judgment of the circuit court is reversed and the judgment of the court of common pleas is affirmed.

Reversed.

Spear, Davis, Spiauck and Price, JJ., concur.